IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Curtis L. King, | ) | C/A No.  0:11-1455-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jon Ozmint; Warden Cartledge; Major Lewis; | ) | **REPORT AND RECOMMENDATION** |
| Capt. Mursier; Lt. Steven; Lt. Croutch; Sgt. | ) | |
| Macky; Sgt. Writ; Male Officer Young; Ofc. | ) | |
| Curhley; Dr. McCree; RN Crawford; RN | ) | |
| Andrew; RN Black; Cynthia Chernecki, | ) | |
| Thomas A. Moore, Jr., *Medical Director*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Curtis L. King ("King"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment.[1]  (ECF No. 178.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), King was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion.  (ECF No. 180.)  King filed a response in opposition, which he subsequently amended.  (ECF Nos. 194 & 199.)  Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted in part and denied in part.

---

[1] All of the defendants except Defendant Moore filed a previous motion for summary judgment which was granted as to King's state law claims and denied as to King's constitutional claims by Order issued by the Honorable Terry L. Wooten, United States District Judge, on September 19, 2012.  (ECF No. 133.)



## BACKGROUND

Liberally construing King's Second Amended Complaint and attachments, and viewing the facts in the light most favorable to King, King's allegations primarily stem from the time period of Friday, January 18, 2008 through Tuesday, January 22, 2008.   During this time, King was housed at the Broad River Correctional Institution and alleges that he was denied medical care for extreme stomach pain and continued vomiting.   King alleges that on January 18, 2008 he was initially "shooed" away from the medical department as his name was not on the sick call list.   (2d Am. Compl., ECF No. 112-2 at 3.)   He appears to have been seen by the medical department later that day on an emergency basis at which time he alleges he was given "a laxative, 2 shots, a pill and a liquid diet."   (Id.; see also ECF No. 112-4 at 2-3.)   King alleges that his symptoms continued to worsen over the next three days.   Although he contends that he repeatedly requested medical attention, he alleges that the defendants denied his requests.   (ECF No. 112-2 at 4.)   On January 22, 2008, he was seen by the medical department, at which time he was transferred to a hospital for surgery for a ruptured appendix.   (ECF No. 112-1 at 1; ECF No. 112-2 at 3, 5.)   King also appears to allege that the defendants retaliated against him by continually denying him medical treatment for his hammer toes and denying him replacement eyeglasses.   (ECF No. 112-1 at 1.)

Liberally construed, King's Second Amended Complaint alleges that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment of the Constitution, as well as various state law claims against Defendant Thomas A. Moore, Jr.[2]   For these alleged violations, King seeks monetary damages.

---

[2] Following the court's Order granting the defendants' motion for summary judgment as to King's state law claims, King was granted leave to amend his Amended Complaint to add Thomas A. Moore, Jr. as a defendant in this action.  Accordingly, the only state law claims remaining in this action pertain solely to Defendant Moore.



## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> Fed. R. Civ. P. 56(c), (e); <u>Celotex Corp.</u>, 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, <u>see,</u> <u>e.g.</u>, <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that



the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion for Summary Judgment**

**1.    Statute of Limitations**

In this case, the defendants argue that King's deliberate indifference and policy challenge claims are barred by the statute of limitations. The applicable statute of limitations for a § 1983 claim arising in South Carolina is three years. <u>See</u> <u>Owens v. Okure</u>, 488 U.S. 235 (1989); S.C. Code Ann. § 15-3-530(5). In this case, King's Complaint reveals, and the parties do not appear to dispute, that King filed this action outside of the three-year statute of limitations. King's claims arose from events as described above that occurred between January 18, 2008 and January 22, 2008. The instant Complaint was filed on June 13, 2011[3]—more than three years after the alleged deprivation took place. However, as many courts in this district have recognized, the statute of limitations is subject to tolling. <u>See</u>, <u>e.g.</u>, <u>Peoples v. Rogers</u>, C/A No. 8:10-24-CMC, 2010 WL 424201 (D.S.C. Feb. 1, 2010); <u>see also</u> <u>Wade v. Danek Med., Inc.</u>, 182 F.3d 281, 289 (4th Cir. 1999) (holding that under a "borrowed" statute of limitations, state law rules regarding tolling apply), <u>cited</u> <u>in</u> <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 320 (4th Cir. 2006). Pertinent here, South Carolina law regarding statutes of limitation provides for tolling of the limitations period during a "statutory prohibition," and courts in this district have interpreted this rule to encompass the federal Prison

---

[3] The prison mailroom stamp on the envelope containing the Complaint reflects a date of June 16, 2011—a date *after* both the date of the postmark (June 13, 2011) and the date-stamp indicating receipt by the Clerk of Court (June 14, 2011). (<u>See</u> ECF No. 112-17 at 1.) Accordingly, viewing this discrepancy in the light most favorable to King, the court will use the earlier of the three dates as the filing date of the Complaint.



Litigation Reform Act's requirement that a prisoner must exhaust his administrative remedies before filing suit in federal court.  See, e.g., Peoples, 2010 WL 424201, at *2.

The defendants argue that King's Complaint was filed outside the statute of limitations even tolling the time for exhaustion of administrative remedies.  Relying on Kelly v. White, C/A No. 4:10-982, 2011 WL 939015 (D.S.C. Mar. 16, 2011), they argue that King is entitled to toll only 114 days for exhaustion.  According to the defendants' logic, 114 days should be added to the three-year limitations deadline, requiring King to have filed his case on or before May 15, 2011 to be timely.

The defendants' methodology is flawed, however, for several reasons.  In analyzing this issue, it is instructive to consider whence the 114-day figure sprung.  In Kelly, the district court's order quoted the South Carolina Department of Corrections ("SCDC") Grievance Policy, which was in turn quoted from the magistrate judge's report and recommendation in that case, which in turn quoted it from another magistrate judge's report and recommendation in a different case.  See Jones v. Kay, C/A No. 4:07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007) (district judge's order adopting the magistrate judge's report and recommendation in the absence of objections).  It does not appear that any of the judges in those cases had the benefit of the actual, full SCDC grievance policy, which the defendants have provided in this case. (See SCDC Policy/Procedure GA-01.12, ECF No. 178-7.) Several important principles become apparent upon review of the full policy that demonstrate a myriad of problems with using a bright-line time period for exhaustion of administrative remedies in this context.  First, even assuming for the sake of discussion that 114 days is an accurate figure

to use as a standard time period for exhaustion,[4] the full policy reveals that the process can be extended for a variety of reasons.  (See, e.g., id. at 5, ECF No. 178-7 at 6 (providing that the Chief/Designee, Inmate Grievance Branch may agree to a request for an extension up to 75 days); id. at 7, ECF No. 178-7 at 8 (providing that when a response exceeds the established time limits the grievance will automatically proceed to the next level, except when the Inmate Grievance Branch grants a continuance for a specific period); id. (providing that exceptions to the time limit for filing grievances may be made where an "inmate can show reasonable cause, i.e., inmate physically unable to initiate grievance due to hospitalization, court appearance, etc.")).  Thus, the administrative grievance process through SCDC may, depending on the circumstances, actually take far longer than 114 days.[5]

Moreover, use of the 114-day period conflates the two separate and distinct issues of timeliness and exhaustion of administrative remedies.  Prior to Kelly, some judges had referenced the 114-day period when determining whether a prisoner's complaint should be summarily dismissed for failure to exhaust, since the timing of the filing and the prisoner's assertions demonstrated that insufficient time had elapsed (i.e., less than 114 days) for the prisoner to have completed the

---

[4] Moreover, the quoted portion relied upon in the cases cited above itself reflects a problem with the 114-day period:  although the 114-day figure is apparently derived from adding together the time periods permitted for various steps during the grievance process, one of those time periods expressly refers to "working days."  Since the number of working days to complete that step of the process will vary depending on weekends, holidays, and emergency closures, courts cannot rely on the assumption that the entire exhaustion process will always take a maximum of 114 days.

[5] The court also observes that examples of variations in the application of this policy exist in the instant case.  The record shows that King's Step 1 Grievance was forwarded to the Step 2 level after approximately a year and four months "per Policy GA-01.12."  (See ECF No. 178-6 at 2.) Additionally, it appears that while SCDC denied King's Step 2 Grievance on March 29, 2010, the inmate grievance coordinator did not provide this decision to King until over two and a half months later on June 17, 2010.  (Id.)



grievance process.  See, e.g., Jones, C/A No. 4:07-3480, 2007 WL 4292416.  But whether a prisoner

has *prematurely* filed a case because he has circumvented the grievance process and therefore failed

to exhaust his administrative remedies is a different question than whether a lawsuit is filed outside

the applicable statute of limitations and therefore commenced *too late*.  Consideration of timeliness

issues, such as limitations periods and tolling, is retrospective—a court must look back at actual past

events.  Contrarily, consideration of whether a prisoner has filed without exhausting administrative

remedies is generally prospective, examining what remains to be done before he can come to federal

court.  Using the same time period to address both concepts illogically assumes that the minimum

and maximum time frames to complete the grievance process are equal, as well as inaccurately

assuming that they are always the same for every prisoner.

Further, the defendants' argument utterly fails to account for the requirement applicable to

the majority of prisoner plaintiffs in SCDC to appeal a denial of their grievance to the South Carolina

Administrative Law Court in order to fully exhaust their administrative remedies.  Review from the

Administrative Law Court is generally part of the available administrative remedies an inmate must

exhaust.  S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law

Court, which is an *agency* and court of record within the *executive* branch of the government of this

State.") (emphasis added); S.C. Code Ann. § 1-23-610 (providing that a party who is dissatisfied

with the decision of the Administrative Law Court may seek *judicial review* from the South Carolina

Court of Appeals, and, ultimately, the South Carolina Supreme Court); see Furtick v. S.C. Dep't of

Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that, under the Administrative Procedures Act, the

Administrative Law Court "has jurisdiction over all inmate grievance appeals that have been

PJG

properly filed") (citing <u>Slezak v. S.C. Dep't of Corr.</u>, 605 S.E.2d 506 (S.C. 2004)).[6]  The SCDC grievance policy has no bearing whatsoever on the time such an appeal might take.

The court finds that calculation of the amount of time King should be entitled to toll for exhaustion of administrative remedies is more properly determined by employing by analogy a similar method to that prescribed in the *habeas corpus* context under similar requirements.  Similar to the Prison Litigation Reform Act's requirement for prisoners to exhaust available administrative remedies before filing a federal lawsuit, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires prisoners seeking a federal writ of *habeas corpus* to first exhaust available state remedies.  Additionally, similar to the statute of limitations applicable for the filing of a § 1983 case, AEDPA provides a limitations period for prisoners to seek *habeas corpus* review.  Continuing the analogy, AEDPA provides for tolling of the limitations period during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), just as the South Carolina tolling law applicable here provides for tolling during the presence of a statutory prohibition.  <u>See</u> S.C. Code Ann. § 15-3-100.

Applying this methodology, the court concludes that King's lawsuit was timely filed once the time it took for him to complete the grievance process at SCDC is tolled.  Following denial and

---

[6] Subsequent statutory amendments and case law have established certain exceptions to <u>Furtick</u>'s general rule.  <u>See</u>, <u>e.g.</u>, <u>Howard v. S.C. Dep't of Corr.</u>, 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-<u>Furtick</u> statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the Administrative Law Court lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); <u>Travelscape, LLC v. S.C. Dep't of Rev.</u>, 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the Administrative Law Court is without jurisdiction to hear *facial* challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); <u>Howard</u>, 733 S.E.2d at 218 (applying the holding in <u>Travelscape, LLC</u> to challenges to prison policies).



appeal of his Step 1 grievance, SCDC denied King's Step 2 grievance on March 29, 2010; however, the inmate grievance coordinator did not provide this decision to King until June 17, 2010. (ECF No. 178-6 at 2.) The court observes, therefore, that at the very least a statutory prohibition to King's filing his federal lawsuit existed until June 17, 2010. This period does not even account for the additional time it took to appeal King's Step 2 Grievance regarding the defendants' alleged deliberate indifference to the Administrative Law Court, which the record does not divulge. This additional time would only add to the time period to be tolled. Even without including this additional time, however, King's federal Complaint was timely filed. As stated above, King filed his Complaint on June 13, 2011, approximately a year after the date his SCDC grievance process was concluded. <u>Cf.</u> <u>Saucillo v. Samuels</u>, C/A No. 0:12-240, 2013 WL 360258 (D.S.C. Jan. 30, 2013) (applying S.C. Code Ann. § 15-3-530(5) and § 15-3-100 to a federal prisoner's claim and employing the calculation method recommended herein). The court therefore finds that tolling the time period discussed above renders King's federal lawsuit timely under the three-year statute of limitations.[7]

To the extent the defendants argue that King is not entitled to equitable tolling because he "abandoned" his grievances by filing them more than fifteen days after the alleged incident, their argument fails. As pointed out by King, exceptions to the fifteen-day time limit are made for inmates unable to initiate a grievance due to hospitalization. (<u>See</u> Pl.'s Resp. Opp'n Mot. Summ. J., ECF No. 194 at 3; SCDC Policy/Procedure GA-01.12 at 13.10, ECF No. 178-7 at 8.) Moreover, the court observes that the prison did not reject King's grievances due to untimeliness.

---

[7] Applying the same logic discussed above, the defendants' argument that King's policy challenge claim is barred by the statute of limitations also fails.



Accordingly, based on the circumstances in this case and in light of the evidence presented by King, which the defendants have not refuted, the court concludes that the defendants are not entitled to dismissal of this matter on the basis that King's Complaint was untimely filed.

### 2.     Exhaustion of Administrative Remedies

The defendants argue that summary judgment should be granted in their favor with respect to King's claims that he was retaliated against by being denied treatment for his hammer toes and eye care due to King's failure to exhaust his administrative remedies with regard to these claims. As referenced above, a prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of



proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).  The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies.  <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint.  Next, an inmate may file a "Step 1 Grievance" with designated prison staff.  If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance."

If the Step 2 Grievance is denied, review from the South Carolina Administrative Law Court is generally part of the available administrative remedies an inmate must exhaust.  <u>See</u> <u>supra</u> Part B.1.  It appears that review by the Administrative Law Court of King's claims that he was retaliated against by being denied treatment for his hammer toes and eye care was available to King.  Notably, the United States Supreme Court has observed in discussing the exhaustion requirement of § 1997e that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.  Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." <u>Booth</u>, 532 U.S. at 741 n.6.  Therefore, because appeal to the Administrative Law Court was an available administrative remedy with regard to King's claims that he was retaliated against by being denied treatment for his hammer toes and eye care, King was required to appeal his claims to the Administrative Law Court regardless of the relief he sought.

The defendants argue that King did not exhaust his claim of retaliation by being denied treatment for his hammer toes prior to asserting this claim in his Amended Complaint on September 11, 2011.  However, in his response in opposition King appears to argue that his Step 1 grievance alleging retaliation regarding an incident in which his orthopaedic shoes were confiscated was filed



on October 6, 2010. (Pl.'s Resp. Opp'n Summ. J., ECF No. 194 at 3; see also Grievance, ECF No. 178-8 at 3-4.) King further appears to argue that this claim was "exhausted" in February 2011, when he received a response from his Step 2 grievance on this issue. (Grievance, ECF No. 178-8 at 2.) Even though King was required to appeal the denial of his Step 2 grievance to the Administrative Law Court, the defendants have failed to carry their burden and show in the record presented to the court that King did not do so. See Anderson, 407 F.3d at 683. Accordingly, the defendants are not entitled to summary judgment on this claim on the basis of King's failure to properly exhaust his administrative remedies.

The defendants also argue that King did not file a grievance as to his claim of retaliation by being denied eye care. King does not refute this argument and appears to concede that this claim is moot. (ECF No. 194 at 3.) Accordingly, the defendants are entitled to summary judgment on this claim based on King's failure to properly exhaust his available administrative remedies.

### 3. Defendant Moore

#### a. Official Capacity Claims

To the extent that Defendant Thomas A. Moore, Jr. is sued in his official capacity for monetary damages, he correctly asserts that he is immune from suit in this court. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses



not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, they are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. Will, 491 U.S. at 70-71; see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent Defendant Moore is sued in his official capacity, he is immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### b.  Individual Capacity Claims

To the extent that King raises claims against Defendant Moore in his individual capacity with regard to his responsibilities over medical policies and as director of the medical department, the doctrine of respondeat superior cannot support liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As King has presented no evidence of any personal participation by Defendant Moore



in any alleged constitutional deprivations, this defendant is entitled to summary judgment as to these claims.

### c.    State Law Claims

To the extent that King's Second Amended Complaint is construed to allege state law claims against Defendant Moore, the South Carolina Tort Claims Act ("SCTCA") is the exclusive remedy for individuals suing government employees acting within the scope of their employment. See S.C. Code Ann. § 15-78-70(a). King has not alleged that Defendant Moore was acting outside the scope of his employment. Defendant Moore correctly asserts that he is entitled to dismissal of these claims. As stated above, Defendant Moore is immune from claims raised by King in his official capacity. See supra Part B.3.a. Moreover, the SCTCA requires the agency or political subdivision to be substituted when an employee is individually named, and the agency is similarly entitled to Eleventh Amendment immunity in federal court. See id.; S.C. Code Ann. § 15-78-20(e). Accordingly, the court finds that King's state law claims against Defendant Moore should be dismissed.

### 4.    Respondeat Superior

King appears to allege claims against Defendants Ozmint and Cartledge based solely on their supervisory positions over the other defendants. He does not appear to allege that either of these defendants personally participated in any way in the alleged violations of his constitutional rights. As discussed above, the doctrine of respondeat superior cannot support liability under § 1983. See supra Part B.3.b. Mere knowledge is not sufficient to establish personal participation. Id. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory



liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Second Amended Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold supervisors liable for constitutional injuries inflicted by their subordinates). Accordingly, Defendants Ozmint and Cartledge are entitled to judgment as a matter of law.

### 5.      Deliberate Indifference—Medical Treatment

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII., including deliberate indifference to serious medical needs of prisoners, Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish a claim under the Eighth Amendment for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104).

With regard to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious



medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she

received adequate treatment."); <u>Fleming v. Lefevere</u>, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

### a.    Dr. McRee,[8] Nurse Crawford, Nurse Andrew, and Nurse Black

King has failed to meet the requisite showing from which a reasonable jury could find that Defendants McRee, Crawford, Andrew, and Black were deliberately indifferent to a serious medical need.  King's chief allegation with regard to these defendants appears to be that he did not receive proper medical treatment when he was initially seen in the medical department on or about Friday, January 18, 2008.

In support of the responsive action taken by the medical staff and the individual defendants, the defendants have provided affidavit testimony from Dr. John B. McRee, a physician employed by SCDC, as well as portions of King's medical records.  (<u>See</u> ECF Nos. 178-21, 178-10, 178-11, 178-13, 178-14, 178-15, 178-16, 178-17, & 178-18.)  McRee avers that King presented to the medical department on January 18, 2008 complaining of abdominal pain and vomiting. (McRee Aff. ¶ 7, ECF No. 178-21 at 3.)  He further states that during that visit, King did not have signs of appendicitis such as a lack of bowel sounds or tenderness in the abdomen, and thus the medical staff were not aware that King was at risk of a serious medical condition.  (<u>Id.</u> ¶¶ 9-10.)  McRee avers that, considering King's condition and symptoms, the treatment provided to King at the time of his visit to the medical department on January 18, 2008 addressed his medical need.  (<u>Id.</u> ¶ 11.)  McRee swears that when King later presented to the medical department on January 22, 2008, the staff did

___

[8] It appears that the proper spelling of Defendant McCree is "McRee."  (<u>See</u> McRee Aff., ECF No. 178-21.)



not disregard his medical need but instead immediately sent King to the hospital upon discovering the nature of his condition. (Id. ¶ 14, ECF No. 178-21 at 3-4.) King's medical records corroborate McRee's affidavit that King was seen in the medical department on January 18, 2008 for symptoms of continued vomiting and abdominal cramping. (Med. Records, ECF No. 178-10.) King was prescribed Phenergan to be taken every eight hours with instructions that if his symptoms persisted beyond twenty-four hours, to inform the medical department. (Id.; see also Medication Admin. Record, ECF No. 178-11.)

King's claim of deliberate indifference to a serious medical need fails with regard to Dr. McRee, Nurse Crawford, Nurse Andrew, and Nurse Black because the record unequivocally shows that King was seen and treated by the medical staff for his complaints.[9] Moreover, as stated above, King does not have a claim against these defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, King's claim alleges negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, Defendants McRee, Crawford, Andrew, and Black are entitled to summary judgment on this claim.

---

[9] Although the medical records appear to indicate that on January 18, 2008 King was treated solely by Dr. McRee and non-defendant Nurse Sumner, King nonetheless appears to allege that Nurses Andrew, Crawford, and Black participated in his initial treatment or administration of medication. (See 2d Am. Compl., ECF No. 112-2 at 3.)



### b.    Defendants Lewis, Mursier, Steven, Croutch, Macky, Writ, Young, Curhley, and Chernecki

King's Second Amended Complaint alleges that following receipt of medical treatment and medication on January 18, 2008, his vomiting and pain worsened.  Although inartfully pled, this filing appears to allege that he repeatedly requested to return to the medical department, but that such requests were denied or ignored until the following Tuesday, January 22, 2008,[10] when he was seen by the medical department and subsequently sent to the hospital for treatment of a ruptured appendix. Specifically, King's Second Amended Complaint gives examples of the various instances in which the above-listed defendants purportedly denied his access to the medical department:  that Macky "shooed" King away because his name was not on the sick call list; that Young perceived King as "playing games"; Curhley and Writ "never ensured medical to [King]"; Steven sent King back to his cell when several inmates tried to transport King to the medical department in a laundry buggy; Chernecki heard King's cries; Lewis and Mursier laughed at King and ordered Curhley to put King on cell restriction; and Croutch failed to notice King's continued pain and suffering.  (See 2d Am. Compl., ECF No. 3-4.)  Additionally, King provides sworn affidavits from himself, a cell mate, and another inmate to support his allegations.  (See King Aff., ECF No. 112-7; Barnes Aff., ECF No. 112-9, Muqit Aff., ECF No. 112-10.)

The defendants present limited arguments with regard to King's allegations.  As stated above, to establish a claim under the Eighth Amendment for deliberate indifference to medical needs, King must establish that a defendant had a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  King must show that each defendant (1) had *actual* knowledge (2) of a

---

[10] The court takes judicial notice that January 19-21, 2008 was a three-day weekend and that Monday, January 21, 2008 was a holiday in honor of Dr. Martin Luther King, Jr.



*substantial* risk of *serious* harm to King and (3) that the defendant *disregarded* that substantial risk. Id. at 837. Specifically, in the medical context, an inmate must show both actual knowledge on the part of the defendant of the risk of harm to the inmate and that the defendant "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (internal quotation marks and citation omitted). On the record presented, King's limited allegations fail to establish that Defendants Lewis, Mursier, Steven, Croutch, Macky, Writ, Curhley, and Chernecki had actual knowledge of his medical condition and its severity. Neither has King shown that any of these defendants had knowledge of the instructions from the medical department directing that King be returned to the infirmary after twenty-four hours if his condition had not improved. Accordingly, in the absence of evidence as to all necessary prongs, these defendants are entitled to summary judgment.

With regard to Defendant Young, however, the record before the court could allow a jury to reasonably infer that Young had actual knowledge of King's serious medical need and that he disregarded the risk posed. Specifically, King attaches an affidavit from his cell mate who alleges that "on Saturday at approx. 8:00 p.m. . . . the Unit Officer Young concerning King's intolerable medical condition. Officer Young never got help. Astounded by this level of gross neglect, I could only walk away . . . [a]nd King was left to spend yet another night violently vomiting all night long in our cell." (Barnes Aff. ¶ 11, ECF No. 112-9 at 3.) Defendant Young has presented no evidence or argument refuting these allegations.

The defendants argue in a general fashion that there is no documentation showing that King requested medical care between January 18 and January 22 and that King's name did not appear on

the sick call list.[11]    However, King's assertions and attached affidavits belie the defendants'
unsupported argument.    Moreover, affidavit testimony attached to King's Second Amended
Complaint clearly states that King's cell mate repeatedly "complain[ed] to staff about [King's]
condition," that "King expressed how he need[ed] to get more attention for help," and that "[f]or
over 96 hours and despite [his] best efforts to get King adequate medical care for his nigh[t]marish
suffering, [King's] condition was allowed to purposely deteriorate." (Barnes Aff. ¶¶ 12, 14, 16, ECF
No. 112-9 at 3-4.)  As quoted above, Barnes does specifically aver that Young had knowledge of
King's condition of persistent vomiting and pain and did not get help.  (Id. at ¶ 11, ECF No. 112-9
at 3.)  Accordingly, on this record, a jury could reasonably infer that Defendant Young knew of the
serious physical symptoms and pain displayed by King during the three-day weekend.[12]  While it is
true that "an official's failure to alleviate a significant risk that he should have perceived but did not,
while no cause for commendation, cannot . . . be condemned," based on the record before the court
a reasonable jury could determine that Defendant Young was actually aware that King suffered from
a serious illness and pain requiring medical attention, but chose to do nothing to address King's
requests for care.  See Farmer, 551 U.S. at 838; see also Estelle v. Gamble, 429 U.S. 97, 104-05
(1976) (indicating that intentionally denying or delaying access to medical care by prison guards can
constitute deliberate indifference).

Defendant Young's argument that he is entitled to qualified immunity based on King's
alleged failure to demonstrate a constitutional deprivation also fails for this reason.  See Pearson v.

---

[11] The court notes that King has presented evidence showing that the reason his name did not
appear on a sick call list over the three-day weekend was because no sick call was scheduled on
those days.  (See Letter from Defense Counsel to Plaintiff, ECF No. 112-4 at 2.)

[12] Notably, the record does not contain any affidavit or deposition testimony from Young
asserting that he was not aware of King's serious condition.



Callahan, 555 U.S. 223, 231-32 (2009) (stating that to resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct).

### 6.    Retaliation

King also appears to allege that the defendants retaliated against him by denying him medical treatment for his hammer toes.  To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams, 40 F.3d at 74.

Here, the undisputed record shows that King was seen multiple times by the medical department for his hammer toes, that orthopaedic shoes were requested by Dr. McRee, and that this request was ultimately denied by Dr. Moore.  (See Med. Records, ECF Nos. 178-14, 178-18.) Furthermore, the defendants have provided SCDC Policy OP-22.03 which states that "[a]ll special shoes/insoles must be approved by the medical director" and that "[c]ommonly acquired foot deformities such as hammer toes . . . will not be approved for shoes."  (ECF No. 178-19.)

King has failed to assert facts to show that the alleged retaliatory actions taken by the defendants violated a constitutional right.  To the extent that King complains that he was subjected to retaliatory actions for filing grievances, inmates have no constitutionally protected right to a grievance or complaint system.  See Adams, 40 F.3d at 75.  To the extent that King argues that the



retaliatory conduct was the result of filing actions with the court, the record wholly belies any inference that the denial of his request for shoes for his hammer toes was in response to or causally connected in any way to the filing of the instant Complaint. <u>Id.</u> King's retaliation claim against the defendants therefore fails.

### 7.    Policy

Throughout his Second Amended Complaint, King references a medical policy that categorizes continued vomiting as a non-life threatening emergency. To the extent King relies on the policy in support of his argument that the defendants were deliberately indifferent, this claim fails with regard to the majority of the defendants for the reasons discussed above. To the extent King intended to raise a free-standing claim challenging the constitutionality of the policy, the court observes that King seeks only monetary damages for which the defendants are immune in their official capacities. (<u>See</u> Report and Recommendation, ECF No. 109 at 4 (adopted by Order, ECF No. 13)) (discussing official capacity immunity); <u>supra</u> Part B.3.a.; <u>cf.</u> <u>Virginia Office for Prot. & Advocacy v. Stewart</u>, 131 S. Ct. 1632, 1638 (2011) (discussing <u>Ex parte Young</u>, 209 U.S. 123 (1908), and stating "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes," but noting that the <u>Ex parte Young</u> doctrine "does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration") (internal quotation marks & citation omitted).

### C.    Other Claims

To the extent that King's Second Amended Complaint may be construed to allege any other constitutional violations, the court finds that King has failed to plead sufficient facts to state a plausible claim. <u>See</u> <u>Iqbal</u>, 556 U.S. at 667-68.



## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 178) be granted as to Defendants Ozmint, Cartledge, Lewis, Mursier, Steven, Croutch, Macky, Writ, Curhley, McCree, Crawford, Andrew, Black, Chernecki, and Moore, and denied as to Defendant Young with regard to King's § 1983 Eighth Amendment claim alleging deliberate indifference to a serious medical need.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 23, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).