IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Curtis L. King, | ) | Civil Action No.: 0:11-cv-01455-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jon Ozmint; Warden Cartledge; Major | ) | |
| Lewis; Capt. Mursier; Lt. Steven; | ) | **ORDER** |
| Lt. Croutch; Sgt. Macky; Sgt. Writ; Male | ) | |
| Officer Young; Ofc. Curhley; Dr. McCree; | ) | |
| RN Crawford; RN Andrew; RN Black; | ) | |
| Cynthia Chernecki, Thomas A. Moore, Jr., | ) | |
| *Medical Director*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Curtis L. King ("Plaintiff"), an inmate with the South Carolina Department of Corrections ("SCDC"), filed the above action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Paige J. Gossett.[1]  [R&R, Doc. # 209.] In the R&R, the magistrate recommends that the Court grant Defendants' Motion for Summary Judgment as to Defendants Ozmint, Cartledge, Lewis, Mursier, Steven, Croutch, Macky, Writ, Curhley, McCree, Crawford, Andrew, Black, Chernecki, and Moore, and deny the Motion as to Defendant Young with regard to Plaintiff's deliberate indifference claim. Both Plaintiff and Defendants timely filed objections to the R&R. For the following reasons, this Court adopts the magistrate's recommendation as modified herein.

---

[1]  In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Gossett for pretrial handling.

## Background[2]

Plaintiff's allegations primarily stem from the time period of Friday, January 18, 2008, through Tuesday, January 22, 2008. During this time, Plaintiff was housed at the Broad River Correctional Institution and alleges that he was denied medical care for extreme stomach pain and continued vomiting. Although he contends that he repeatedly requested medical attention, he alleges that Defendants denied his requests. On January 22, 2008, he was seen by the medical department, at which time he was transferred to a hospital for surgery for a ruptured appendix.

## Standard of Review

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party

---

[2]  The facts of this case, including citations to the record, are discussed thoroughly in the magistrate's R&R. [*See* R&R, Doc. # 209, at 2.]

2

makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310 (4th Cir. 2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

### Discussion

Because both Plaintiff and Defendants filed objections, the Court will address each side in turn.

### I.    Plaintiff's objections[3]

The Court reiterates that it may only consider objections to the R&R that direct this Court to a specific error. *See* Fed. R. Civ. P. 72(b); *see United States v. Schronce*, 727 F.2d 91, 94 n.4 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841, 845-47 nn.1-3 (4th Cir. 1985).  Plaintiff's objections do not appear to take issue with any specific finding in the R&R – Plaintiff merely rehashes his initial arguments before the magistrate, simply states background facts, makes general arguments against his place of confinement, or states the applicable law of the case. None of the objections

---

[3]   Plaintiff filed objections and two supplements to his objections, apparently within the objections period. [*See* Docs. # 211–12, 214.] The supplements merely expound on the points made in the original objections. Nonetheless, the Court has considered these filings when evaluating Plaintiff's objections. To the extent Plaintiff's second supplement can be read as motion to enlarge the time to lodge further objections, the Court denies that motion as Plaintiff has had an ample opportunity to file objections, and Plaintiff has taken full advantage of this opportunity. Plaintiff also filed two "Replies" to the R&R, presumably as an effort to respond to Defendants' objections. The Court has also reviewed these filings as responses to Defendants' objections. To the extent Plaintiff was seeking to raise new objections, they would be duplicative of the objections already raised and the time for objections expired well before Plaintiff submitted his Replies.

offered by Plaintiff meet the applicable standard set above as they contain no basis for the objections or contain no additional argument beyond what is found in Plaintiff's pleadings. These issues were correctly addressed by the magistrate.

Nonetheless, out of an abundance of caution, and mindful of this Court's obligation to liberally construe *pro se* pleadings, this Court has conducted a *de novo* review of the R&R, agrees with the magistrate as to the issues raised by Plaintiff, and will briefly addresss Plaintiff's objections.

Plaintiff appears to reargue various state law claims,[4] including an argument that Defendant Moore is not entitled to immunity. As to the state law claims generally, the magistrate explained that all Defendants except Defendant Moore filed a previous motion for summary judgment as to Plaintiff's state law claims, which the Court granted. [*See* R&R, Doc. # 209, at 1 n.1.] Thus, the state law claims in this case have been dismissed. As to Defendant Moore specifically, the magistrate explained that Defendant Moore would be entitled to immunity from suit for any act alleged against him in an official capacity. [*See id*. at 12–14.] Further, the magistrate held that to the extent Plaintiff raises claims against Defendant Moore in his individual capacity with regard to his responsibilities over medical policies and as director of the medical department, the doctrine of respondeat superior cannot support liability under § 1983. [*Id*. at 14.] As he failed to do before the magistrate, Plaintiff makes no allegations beyond mere conjecture that Defendant Moore personally participated in any alleged constitutional deprivations.

Throughout his objections, Plaintiff also makes a rambling effort aimed at attacking the general state of medical care within SCDC. These missives do not point this Court to a specific

---

4  For example, Plaintiff repeatedly discusses the supposed "negligence" of various Defendants.

4

error, and moreover, Plaintiff's attacks on SCDC's medical policy were addressed correctly by the

magistrate as follows:

> Throughout his Second Amended Complaint, [Plaintiff] references a medical policy
> that categorizes continued vomiting as a non-life threatening emergency. To the
> extent [Plaintiff] relies on the policy in support of his argument that the defendants
> were deliberately indifferent, this claim fails with regard to the majority of the
> defendants [because Planitiff failed to show that anyone other than Defendant Young
> had actual knowledge of a substantial risk of serious harm to Plaintiff and that the
> defendants disregarded that substantial risk]. To the extent [Plaintiff] intended to
> raise a free-standing claim challenging the constitutionality of the policy, the court
> observes that [Plaintiff] seeks only monetary damages for which the defendants are
> immune in their official capacities.

[R&R, Doc. # 209, at 19–20.]

Plaintiff also takes issue with the magistrate's holding that his retaliation claim against

Defendants fails. Plaintiff appears to argue that he should have been given orthopedic shoes for his

hammer toes. As the magistrate noted, Plaintiff had not shown a retaliatory act in response to the

exercise of a constitutionally protected right. "[T]he undisputed record shows that [Plaintiff] was

seen multiple times by the medical department for his hammer toes, that orthopaedic shoes were

requested by Dr. McRee, and that this request was ultimately denied by Dr. Moore." [R&R, Doc.

# 209, at 22.] To the extent Plaintiff is now attempting to claim that he had shoes, but that those

shoes were taken from him, this blanket statement still fails to show that the alleged retaliatory

action taken by Defendants violated a constitutional right.[5]

## II.    Defendants' objections

Defendants object to the magistrate's findings that (1) the statute of limitations does not bar

---

[5]   Plaintiff references a grievance in claiming that his shoes were taken. The grievance referenced
by Plaintiff in his objections merely discusses the medical department's decision not to issue him
new orthopedic shoes. [Grievance, Doc. # 178-9.] The magistrate thoroughly addressed this
issue.

Plaintiff's claims and (2) the Complaint establishes an issue of material fact as to whether Defendant Young was deliberately indifferent to Plaintiff's serious medical needs. [*See* Defs.' Obj., Doc. # 213, at 2.]

### A.    Statute of limitations

Defendants do not appear to argue with the magistrate's finding that the statute of limitations is subject to tolling. Instead, Defendants argue, as they did before the magistrate,[6] that even after tolling the time for Plaintiff to exhaust his administrative remedies, Planitiff's Complaint was filed outside the statute of limitations. [*Id*.]

First, Defendants appear to argue that the magistrate erred by holding that under SCDC's grievance policy Plaintiff could have been entitled to more than 114 days in which to exhaust his administrative remedies. [Defs.' Obj., Doc. # 213, at 8–9.] Defendants content that SCDC policy permits a 114-day grievance process. [*Id*. at 5.] Defendants argue that the statute of limitations was thus only tolled until May 15, 2008, or 114 days from the date of the alleged deliberate indifference at issue.[7] By Defendants' logic, the statute of limitations began to run on May 15, 2008, and expired on May 15, 2011, a month before Plaintiff filed his Complaint on June 13, 2011. [*Id*.]

The magistrate acknowledged in her R&R that some cases in this district have applied a 114-day period in which an inmate can exhaust administrative remedies. [*See* R&R. Doc. # 209, at 6–7 (citing *Jones v. Kay*, No. 4:07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007) (district judge's order adopting the magistrate judge's report and recommendation in the absence of objections); *Kelly v.*

---

6    Defendants spend a significant portion of their objections recapping their initial argument and the magistrate's response to that argument. [*See* Defs.' Obj., Doc. # 213, at 2–6.]  The Court focuses on Defendants' objections to the magistrate's findings.

7    No party appears to dispute that May 15, 2008, is 114 days from the day of Defendant Young's alleged deliberate indifference.

*White*, No. 4:10-982, 2011 WL 939015 (D.S.C. Mar. 16, 2011) (relying on *Jones* to apply a 114-day

window)).] However, the magistrate reasoned that these courts may have lacked the benefit of the

actual SCDC grievance policy, which is part of the record in this case. In objecting to the

magistrate's finding, Defendants acknowledge that *Jones* and *Kelly* are unclear about whether the

court in those cases had a copy of the grievance policy. Defendants nonetheless argue that "the

opinions in *Jones* and *Kelly suggest* that the judges knew what was contained in the policy and still

ruled that the statute of limitations began to run after the 114-day period." [Defs.' Obj., Doc. # 213,

at 8–9 (emphasis added).]

Defendants' own objection acknowledges that the court in *Jones* and *Kelly* may have lacked

a copy of SCDC's grievance policy. Moreover, the magistrate offered this only as a possible

explanation for how the court in *Jones* and *Kelly* arrived at a 114-day number. What Defendants do

not attack is the magistrate's explanation for how an inmate, including Plaintiff, may be entitled to

more than 114 days of tolling. The magistrate thoroughly addressed this issue as follows:

> Several important principles become apparent upon review of the full policy
> that demonstrate a myriad of problems with using a bright-line time period for
> exhaustion of administrative remedies in this context. First, even assuming for the
> sake of discussion that 114 days is an accurate figure to use as a standard time period
> for exhaustion, the full policy reveals that the process can be extended for a variety
> of reasons. (*See* SCDC Policy/Procedure GA-01.12, ECF No. 178-7, at 5–6
> (providing that the Chief/Designee, Inmate Grievance Branch may agree to a request
> for an extension up to 75 days); *id.* at 7, ECF No. 178-7 at 8 (providing that when a
> response exceeds the established time limits the grievance will automatically proceed
> to the next level, except when the Inmate Grievance Branch grants a continuance for
> a specific period); *id*. (providing that exceptions to the time limit for filing grievances
> may be made where an "inmate can show reasonable cause, i.e., inmate physically
> unable to initiate grievance due to hospitalization, court appearance, etc.")). Thus, the
> administrative grievance process through SCDC may, depending on the
> circumstances, actually take far longer than 114 days.
>
> Moreover, use of the 114-day period conflates the two separate and distinct
> issues of timeliness and exhaustion of administrative remedies. Prior to *Kelly*, some

judges had referenced the 114-day period when determining whether a prisoner's complaint should be summarily dismissed for failure to exhaust, since the timing of the filing and the prisoner's assertions demonstrated that insufficient time had elapsed (i.e., less than 114 days) for the prisoner to have completed the grievance process. *See, e.g.*, *Jones*, 2007 WL 4292416. But whether a prisoner has prematurely filed a case because he has circumvented the grievance process and therefore failed to exhaust his administrative remedies is a different question than whether a lawsuit is filed outside the applicable statute of limitations and therefore commenced too late. Consideration of timeliness issues, such as limitations periods and tolling, is retrospective—a court must look back at actual past events. Contrarily, consideration of whether a prisoner has filed without exhausting administrative remedies is generally prospective, examining what remains to be done before he can come to federal court. Using the same time period to address both concepts illogically assumes that the minimum and maximum time frames to complete the grievance process are equal, as well as inaccurately assuming that they are always the same for every prisoner.

[R&R, Doc. # 209, at 5–7.] The Court agrees with, and adopts, the discussion of the magistrate quoted above. Plaintiff's lawsuit was timely filed once the time it took for him to complete the grievance process at SCDC is tolled. Looking to SCDC's grievance policy, "[u]nder no circumstances will the grievance process exceed 180 days." [SCDC Policy/Procedure GA-01.12, Doc. # 178-7, at 6.] At the very least, on the record in this case it could have taken Plaintiff until approximately July 2008 to complete the grievance process. As stated above, Plaintiff filed his Complaint on June 13, 2011, within three years of this date.[8] Defendants' objection on this issue is overruled.

Second, Defendants object to the magistrate's finding that a South Carolina inmate is required to appeal a Step 2 grievance to the Administrative Law Court ("ALC") to exhaust his

---

[8] The magistrate held that a statutory prohibition to Plaintiff filing his federal lawsuit existed until June 17, 2010, when the inmate grievance coordinator provided Plaintiff with SCDC's decision denying Plaintiff's Step 2 grievance. [R&R, Doc. # 209, at 9.] Given that the SCDC policy at issue provided a 180-day window to complete the grievance process, it is unclear whether the magistrate's analysis is correct. The Court therefore modifies the R&R to clarify that, given the record in this case, it could have taken Plaintiff until at least July 2008 to complete the grievance process.

8

administrative remedies. [*See* Defs.' Obj., Doc. # 213, at 6–8.] The Court is aware that several courts in this district have held, both expressly and by implication, that an appeal to the ALC is not required in order to exhaust administrative remedies. *See, e.g.*, *Ward v. Byers*, No. 8:12-cv-01480, 2013 WL1403220 at *5 (D.S.C. March 11, 2013), *R&R adopted*, 2013 WL 1404918 (D.S.C. April 5, 2013) ("[Section] 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court."); *Brown v. Ford*, No. 9:11-0019, 2011 WL 4904437 at *2 n.6 (D.S.C. Sept. 15, 2011) *R&R adopted*, 2011 WL 4352320 (Sept. 16, 2011) ("Plaintiff was not required to appeal the denial of his Step 2 grievance to the Administrative Law Court . . . .").

However, regardless of whether or not Plaintiff in this case appealed his Step 2 grievance to the ALC, his Complaint is not barred by the statute of limitations for the reasons discussed above. Thus, it is not necessary in the above-captioned case to rule on this issue. The Court therefore declines to make a ruling on whether an inmate in South Carolina is required to appeal a Step 2 grievance to the ALC to exhaust his administrative remedies. The R&R is modified accordingly, and Defendants' objection on this point is overruled as moot.[9]

### B.    Material fact

Defendants argue in their final objection that the magistrate erred in deciding that Plaintiff established an issue of material fact as to whether Defendant Young was deliberately indifferent. [*See* Defs.' Obj., Doc. # 213, at 9–11.] Much of Defendants' objection rehashes their arguments before the magistrate, going so far as to block quote extensive portions of their Memorandum in Support of their Motion for Summary Judgment. [*Id*.] To the extent this is a sufficient objection, the

---

[9]    This Court notes it has recently recommitted a case to Magistrate Judge Gossett, in part, so that the parties could specifically brief whether South Carolina and federal laws require an inmate to appeal a grievance to the ALC. *See Scott v. Pearson*, No. 0:12–cv–01538, 2013 WL 4080724, at *2 (D.S.C. Aug. 13, 2013).

Court has reviewed the R&R on this point *de novo* and agrees with the magistrate as discussed below.

Defendants initially argue that the affidavit of Plaintiff's cell mate is unclear. The affidavit alleged that "on Saturday at approx. 8:00 p.m. . . . the Unit Officer Young concerning [Plaintiff's] intolerable medical condition. Officer Young never got help. Astounded by this level of gross neglect, I could only walk away . . . [a]nd [Plaintiff] was left to spend yet another night violently vomiting all night long in our cell." [*See* Barnes Aff., Doc. # 112-9, at 3, ¶ 11.] Defendants claim that this does not show deliberate indifference on the part of Defendant Young. However, Defendants fail to cite the other portions of the affidavit relied on by the magistrate. As the magistrate explained, the affidavit states that Plaintiff's cell mate repeatedly complained to staff about Plaintiff's condition, that Plaintiff expressed a need for more attention, and that "[f]or over 96 hours and despite [his] best efforts to get [Plaintiff] adequate medical care for his nigh[t]marish suffering, [Planitiff's] condition was allowed to purposely deteriorate." [R&R, Doc. # 209, at 21 (citing various portions of the Barnes Affidavit).] As the magistrate explained, believing Plaintiff's evidence and drawing all justifiable inferences in his favor, the affidavit does specifically aver that Defendant Young had knowledge of Plaintiff's condition of persistent vomiting and pain and did not get help.

The remainder of Defendants' objection argues that Defendant Young lacked the culpable state of mind by pointing to evidence that Plaintiff was seen by medical staff numerous times and that he was told to wait until his medicine kicked in. [*See* Defs.' Obj., Doc. # 213, at 10–11.] However, while this may in fact be a close case, the Court cannot weight the evidence[10] at the

---

[10]  In putting forth this evidence it is telling that Defendants did nothing to address the magistrate's observation that the record does not contain any affidavit or deposition testimony

summary judgment stage. The Court agrees with the magistrate's summation of the claim for

deliberate indifference against Defendant Young:

> Accordingly, on this record, a jury could reasonably infer that Defendant Young
> knew of the serious physical symptoms and pain displayed by [Plaintiff] during the
> three-day weekend. While it is true that an official's failure to alleviate a significant
> risk that he should have perceived but did not, while no cause for commendation,
> cannot be condemned, based on the record before the court a reasonable jury could
> determine that Defendant Young was actually aware that [Plaintiff] suffered from a
> serious illness and pain requiring medical attention, but chose to do nothing to
> address [Plaintiff's] requests for care.

 [R&R, Doc. # 209, at 21 (internal citations and quotation marks omitted).] The Court overrules

Defendants' objection.

### Conclusion

The Court has thoroughly analyzed the entire record, including the R&R, objections to the

R&R, Plaintiff's replies, and the applicable law.  The Court has further conducted the required

review of all of the objections.  For the reasons stated above and by the magistrate, the Court adopts

the R&R as modified herein. Specifically, while the parties' objections are overruled, the Court

modifies the R&R to clarify that, given the record in this case, it could have taken Plaintiff until at

least July 2008 to complete the grievance process. Further, the Court declines to make a ruling on

whether an inmate in South Carolina is required to appeal a Step 2 grievance to the ALC in order

to exhaust his administrative remedies.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc.

# 178] is **GRANTED** as to Defendants Ozmint, Cartledge, Lewis, Mursier, Steven, Croutch, Macky,

Writ, Curhley, McCree, Crawford, Andrew, Black, Chernecki, and Moore, and **DENIED** as to

Defendant Young with regard to Plaintiff's § 1983 Eighth Amendment claim alleging deliberate

_____

from Defendant Young asserting that he was not aware of Plaintiff's serious condition.

11

indifference to a serious medical need.[11]

As Defendants' Motion for Summary Judgment has been denied as to the deliberate indifference claim against Defendant Young, the case should proceed to trial. According to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent [a *pro se* Plaintiff] unable to afford counsel." Specifically, "[i]f it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Leeke v. Collins*, 574 F.2d 1147, 1153 (4th Cir. 1978). Additionally, the Court may use its discretion to appoint counsel for an indigent in a civil action. *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971). The Court finds that the appointment of counsel is justified to ensure that the Plaintiff, who has limited resources and has had no legal training, receives a fundamentally fair trial.

Thus, **IT IS FURTHER ORDERED** that W. Christopher Swett, Esquire,[12] of Motley Rice in Charleston, S.C., who is experienced and knowledgeable in these matters, is **APPOINTED** as counsel to assist Plaintiff in the instant case. Mr. Swett is ordered to contact Plaintiff, who the Court believes is currently incarcerated at the Turbeville Correctional Institution, within thirty days. The Clerk of Court is directed to send a copy of this order appointing counsel to both Plaintiff and Mr. Swett. Mr. Swett shall have access to court filings on ECF and shall consult with opposing counsel within a reasonable period of time regarding (1) the need for any limited discovery by Mr. Swett, (2) the mediation of the case, and (3) the submission of a short proposed consent scheduling order,

---

[11] To the extent Plaintiff attempted to bring additional state law claims against Defendant Young, summary judgment is granted on those claims for the reasons discussed herein and by the magistrate. Thus, the only claim moving forward to trial is Plaintiff's § 1983 Eighth Amendment claim against Defendant Young alleging deliberate indifference to a serious medical need.

[12] The Court contacted Mr. Swett prior to the entry of this order to confirm his willingness to serve as a courtesy to the Court.

12

which should include deadlines for limited discovery and mediation. The proposed consent

scheduling order shall be submitted as soon as possible in order for the case to be disposed of in the

future.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
August 30, 2013